UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | § |
| | § |
| VS. | §   CRIMINAL NO. 4:18-cr-00103 |
| | § |
| MARCELLE DA ROCHA GUIMARAES, | § |
| CARLOS OTAVIO GUIMARAES, and | § |
| JEMIMA DA ROCHA GUIMARAES | § |

**DEFENDANTS CARLOS AND JEMIMA GUIMARAES' JOINT MEMORANDUM OF LAW IN CONNECTION WITH DEFENDANTS RENEWED RULE 29 MOTION**

Defendants Carlos and Jemima Guimaraes respectfully offer this Court a brief memorandum of law to accompany their earlier motion for acquittal made under Federal Rules of Criminal Procedure 29.[1] As of the close of trial May 25, 2018, the Court had reserved ruling on the motion. Specifically, Mr. & Mrs. Guimaraes move for a judgment of acquittal because as a matter of law, the evidence adduced at trial is insufficient to sustain a conviction against Mr. & Mrs. Guimaraes under Federal Rule of Criminal Procedure 29.

Federal Rule of Criminal Procedure 29 provides that on motion of a defendant the court shall order the entry of judgment of acquittal of one or more offenses charged in the indictment after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses.[2]

---

[1] Defendants re-urged their motion with the Court on the record after the jury returned a guilty verdict on Count Two. This memorandum of law is submitted in support of that motion, or, in the alternative, this filing should be considered a motion under Rule 29(c).

[2] A motion for judgment of acquittal "tests the sufficiency of the evidence against [the] defendant, and avoids the risk that a jury may capriciously find him guilty though there is no legally sufficient evidence of guilt." 2 Charles Alan Wright, Federal Practice and Procedure, Criminal 2d § 461, pp. 637-38 (West 1982).

1

In *Jackson v. Virginia,*[3] the Supreme Court recognized the standard for judging motions for acquittal in federal criminal trials is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt."[4] If there is no evidence upon which a rational mind might fairly conclude guilt beyond a reasonable doubt, the motion must be granted.[5]

The court must consider the evidence in the light most favorable to the Government, but it also must grant a judgment of acquittal if the evidence provides "equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence of the crime charged."[6] Evidence of only *a possible* connection between the defendant and others engaged in unlawful conduct is not enough, especially where the defendant's behavior was consistent with innocence of the charged offense.[7]

A conviction under 18 U.S.C. § 1204(a) requires proof that the defendant: (1) retained a child outside the United States; (2) with the intent to unlawfully obstruct the parental rights of another. To aid and abet under 18 U.S.C. § 2, a defendant must associate with the criminal venture, participate in it, and seek by his actions to make the venture succeed.[8] Under § 2, a defendant <u>must</u> share in the intent to commit the offense and play an active role in the offense's commission.[9]

Section 1204(c)(2) provides an affirmative defense that a defendant did not commit international parental kidnapping if the defendant was fleeing an incidence or pattern of domestic

---

[3] 443 U.S. 307, 318 (1979).

[4] *Id*. at 318.

[5] *United States v. Crane*, 445 F.2d 509, 520 (5th Cir. 1971) ("The determining inquiry is whether there is substantial evidence upon which a jury might reasonably base a finding that the accused is guilty beyond a reasonable doubt.").

[6] *See United States v. Hernandez-Bautista*, 293 F.3d 845, 853 (5th Cir. 2002) (affirming grant of judgment of acquittal in a case where defendant was accused of aiding and abetting).

[7] *See id.* at 853-55.

[8] *United States v. Stone*, 960 F.2d 426, 433 (5th Cir. 1992).

[9] *United States v. Delgado*, 256 F.3d 264, 274 (5th Cir. 2001).

violence. The affirmative defense under § 1204(c)(2) requires no *mens rea*, nor does it impose any time limitations upon the defendant's fleeing from violence.[10] Rather, a defendant must only establish this defense by a preponderance of the evidence, meaning the evidence shows the allegation is more likely true than not.[11] As this Court noted, here, § 1204's affirmative defense required acquittal if a preponderance of the evidence demonstrated that Mrs. & Mrs. Guimaraes reasonably believed that their daughter, Marcelle Guimaraes, was fleeing an incidence or pattern of domestic violence.[12]

While the jury "is free to choose among reasonable constructions of the evidence"[13] there was no evidence adduced at trial that directly, or even indirectly, contradicted the fact that Mr. & Mrs. Guimaraes reasonably believed their daughter was the victim of domestic violence. Rather, uncontested evidence—much of it adduced from the Government's witnesses—clearly demonstrated that Mr. & Mrs. Guimaraes reasonably believed their daughter was fleeing an incident or pattern of domestic violence.

The Government has conceded that the trial record contained evidence of an incidence or pattern of domestic violence[14] and the Court also agreed that evidence demonstrated an incident or pattern of domestic violence.[15] Testimony from Betty Brann and Renata Torzillo established at

---

[10] *See e.g. United States v. Huong Thi Kim*, 798 F. Supp. 2d 467, 479 (E.D.N.Y. 2011) (jury instruction as to affirmative defense of domestic violence did not contain *mens rea* requirement); *aff'd* 507 Fed. App'x 12 (2d Cir. Jan 3, 2013) (unpublished). The Government has conceded that the statute's affirmative defense contains no time limit. *See* Exhibit 1.

[11] *Patterson v. New York*, 432 U.S. 197, 206-07 (1977) (when statute sets out an affirmative defense, it does not violate due process to require defense to prove that defense by a preponderance of the evidence as long as the elements of the defense do not negate an element the government must prove); *Woods v. Butler*, 847 F.2d 1163, 1165-67 (5th Cir. 1988).

[12] Dkt. No. 128, Court response to Jury Question 5.

[13] *United States v. Baytank, Inc.*, 934 F.2d 599, 616 (5th Cir. 1991)

[14] Exhibit 2.

[15] Exhibit 3.

least two uncontroverted incidents of domestic violence in the marriage.[16] Additionally, Defense Exhibits 7, 51, and 59 established that incidents of domestic violence had occurred of which Mr. & Mrs. Guimaraes were aware.

While Government witness Christopher Brann disputed whether the violence described in Defense Exhibit 7 constituted domestic violence, no witness contested the fact that Defense Exhibit 7 established Mr. & Mrs. Guimaraes knew about allegations of domestic violence in the marriage as of November 2012. Government Exhibit 33, the secret recording of Marcelle Guimaraes made by Dr. Brann, also established that as of January 2013, it appeared to Dr. Brann, that Mr. & Mrs. Guimaraes believed the domestic violence allegations made by their daughter.[17]

Uncontroverted testimony from Government witness Jared Woodfill established that Marcelle Guimaraes believed she was the victim of domestic violence,[18] and that her father clearly believed his daughter's allegations of domestic violence by her husband.[19] This testimony was echoed by Ricardo Ramos, attorney for Marcelle Guimaraes, whose uncontroverted testimony established: 1) that Ms. Guimaraes's divorce filings and discovery responses offered evidence of domestic violence against Ms. Guimaraes; 2) that descriptions of domestic violence in Defendants Exhibit 51 echoed the extensive accounts of domestic violence contained in Ms. Guimaraes's divorce pleadings and discovery responses; 3) that "Carlos and Jemima Guimaraes were made aware of this very information"; and, 4) that Mr. & Mrs. Guimaraes knew about the factual basis for the domestic violence allegations made by their daughter.[20] Additionally, Mr. Ramos testified

---

[16] The Government has contested that the violence discussed in DX 7 constituted domestic violence.

[17] GX 33 at 20:25 to 20:37 ("Especially since your family hates me after what you told them about me. Marcelle, have you seen the way your mom and dad look at me now? Have you seen the way your father looks at me?")

[18] Exhibit 4.

[19] Exhibit 4 and Exhibit 5.

[20] Exhibit 6.

4

that both parents were shown, and were aware of, the detailed allegations of domestic violence included in their daughter's affidavit and exhibits, which her counsel had attached to her December 2012 amended divorce petition.[21] The Government offered no evidence to controvert these facts.

Government witness Christopher Brann testified that there was no evidence that "Mr. and Mrs. Guimaraes did not believe [Dr. Brann was] being physically violent to their daughter."[22] Dr. Brann testified that he believed the behavior of Mr. & Mrs. Guimaraes indicated they thought their daughter was the victim of domestic violence.[23] Dr. Brann testified that as of November 22, 2012, "Mr. & Mrs. Guimaraes had every right and would have been totally reasonable to believe that their daughter was the victim of domestic violence."[24] Dr. Brann's testimony as to these facts remains uncontroverted.

During argument, the Government asserted that Government Exhibits 28-A, 85-A, and 86-A demonstrated Mr. Guimaraes's belief that his daughter was dramatic or overly emotional.[25] Such conclusions are nothing more than unsupported conjecture because no witness with personal knowledge of the emails testified about the documents' meaning or the factual background at the time the emails were written. Additionally, during arguments, the Government offered these exhibits as evidence of the conspiracy, a charge which the jury rejected.

At trial, the Government attempted to elicit witness testimony to dispute the assertion that Ms. Guimaraes was the victim of domestic violence. What the Government failed to do, however,

---

[21] Exhibit 7.

[22] Exhibit 8.

[23] Exhibit 9.

[24] Exhibit 10.

[25] Exhibit 11.

is elicit *any* evidence contradicting exhibits and testimony from <u>at least</u> four witnesses[26] that established: 1) Domestic violence existed in the marriage; 2) Mr. & Mrs. Guimaraes believed their daughter was the victim of domestic violence; and, 3) Mr. & Mrs. Guimaraes's belief was reasonable. Thus, the evidence from trial, even if viewed in a light most favorable to the Government, demonstrates that Mr. & Mrs. Guimaraes reasonably believed their daughter was fleeing an incident or pattern of domestic violence. Because of this, Mr. & Mrs. Guimaraes not only met the standard for establishing § 1204's affirmative defense, but they also clearly established they lacked the necessary criminal intent for conviction under § 1204(a).

Because the evidence supports a theory of innocence at least as much as a theory of guilt of the crime charged, this Court should grant the motion for acquittal under Rule 29.[27]

Respectfully submitted,
**RUSTY HARDIN & ASSOCIATES LLP**

By: */s/ Russell Hardin Jr.*
    Russell Hardin, Jr.
    State Bar No. 19424
    Jennifer E. Brevorka
    State Bar No. 1725400
5 Houston Center
1401 McKinney Street Suite 2250
Houston, Texas 77010
Telephone: (713) 652-9000
Facsimile: (713) 652-9800
rhardin@rustyhardin.com
jbrevorka@rustyhardin.com

*Attorneys for Defendant*
*CARLOS OTAVIO GUIMARAES*

---

[26] Betty Brann's testimony established that Mrs. Guimaraes acknowledged Dr. Brann "had done horrible things" to Ms. Guimaraes.

[27] *United States v. Dean*, 59 F.3d 1479, 1484 (5th Cir. 1995).

        **JONES WALKER, LLP**
        811 Main Street, Suite 2900
        Houston, Texas 77002
        Phone: (713) 437-1811
        Fax: (713) 437-1946

        */s/ James Ardoin (with permission)*
        JAMES ARDOIN
        State Bar No. 24045420
        SDTX No. 571281
        Email: jardoin@joneswalker.com

        *Attorney for Defendant*
        *JEMIMA DA ROCHA GUIMARAES*

### CERTIFICATE OF SERVICE

  I hereby certify that a true and correct of the above and foregoing filed via the CM/ECF system which caused service upon all parties on May 28, 2018.

        */s/ Jennifer E. Brevorka*
        JENNIFER E. BREVORA